IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:09-CV-100-BR

| | | |
|---|---|---|
| MARY McLAURIN and CARRIE MOORE on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | ORDER |
| v. | ) | |
| | ) | |
| PRESTAGE FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiffs' Motion for Conditional Certification of a

Collective Action pursuant to the Fair Labor Standards Act (DE # 21) and on plaintiffs' Motion

for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure (DE # 25).

Defendant Prestage Foods, Inc. ("Prestage") has responded to both motions, and plaintiffs have

replied. These matters are ripe for disposition.

## I. BACKGROUND

This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 *et seq.*

The named plaintiffs are former employees at the St. Pauls, North Carolina, turkey processing

plant owned by Prestage. Plaintiffs claim that during the class period,[1] Prestage utilized a "line

---

[1] It is unclear whether plaintiffs actually propose 19 June 2006 or 19 June 2007 as the starting date of the class period. Plaintiffs' complaint consistently references a 19 June 2006 start date, while plaintiffs' proposed class notice uses the 19 June 2007 date. Plaintiffs' class certification memoranda are inconsistent with respect to the start date. (Compare, e.g., Pls.' Mem. Supp. Mot. Class Certification, DE # 26, at 3 (listing 19 June 2007 as the beginning of the class period) with id. at 6 (appearing to indicate a 2006 start date).) The court notes that the statute of limitations for plaintiffs' claims under the NCWHA is two years. See N.C. Gen. Stat. § 95-25.22(f). With regard to the FLSA claims, the statute of limitations is two years, except that a cause of action arising out of a willful

(continued...)

time" compensation system (also known as a "gang time" or "schedule time" system), whereby Prestage paid its employees only for the hours the production lines were scheduled to operate. (Compl. ¶¶ 18, 21; Pope Aff., DE # 45-1, ¶ 22.) Plaintiffs allege that Prestage failed to pay them and potentially 1,000 other employees regular and overtime pay for actual, compensable time worked. (Compl. ¶¶ 29-30; Pls.' Mem. Supp. Mot. Class Certification, DE # 26, at 9 (estimating number of prospective plaintiffs to be between 300 and 1,000).) Plaintiffs assert that the uncompensated work includes time spent changing into and out of personal protective gear required by Prestage; time spent washing, sanitizing and storing protective gear and work tools; and time spent traveling to and waiting at production lines. (Compl. ¶ 18; Pls.' Mem. Supp. Mot. Class Certification, DE # 26, at 3.) Plaintiffs argue that Prestage's practices violate both the FLSA and the NCWHA. (Compl. ¶¶ 45-61.) Plaintiffs seek class certification of their state law claims under Rule 23 of the Federal Rules of Civil Procedure and certification of their FLSA claims as a collective action under 29 U.S.C. § 216(b). Prestage opposes certification under both Rule 23 and the FLSA.

## II. DISCUSSION

A. Motion for Certification as FLSA Collective Action

    1. FLSA Certification Procedure

      The FLSA permits employees to maintain an action against an employer for unpaid

---

[1](...continued)

violation may be brought within three years after the cause of action accrued. See 29 U.S.C. § 255(a). The court further notes that if 19 June 2007 is used as the beginning date for the class, it is possible that plaintiff Mary McLaurin's claims may not fall within the class period. Ms. McLaurin's affidavit indicates that she worked for Prestage from November 2006 until May 2007. (See McLaurin Decl., DE # 58-2, ¶ 2.) However, in a conflicting statement made in a later paragraph, Ms. McLaurin states that she worked for Prestage "for approximately two (2) years." (Id. ¶ 11.) Thus, the court cannot determine whether a typographical error was made regarding Ms. McLaurin's dates of employment. Regardless, the starting date for the class period must be clarified prior to the mailing of the class notice. See Section III., infra.

2

minimum wages and overtime pay on behalf of themselves and all others similarly situated. 29

U.S.C. § 216(b). An employee who desires to participate in an FLSA collective action must

"give[] his consent in writing to become . . . a party . . . ." Id. There are two requirements for

the certification of an FLSA collective action. First, the members of the proposed class must be

"similarly situated." Id.; see also De Luna-Guerrero v. N.C. Growers Ass'n, Inc., 338 F. Supp.

2d 649, 654 (E.D.N.C. 2004). Second, the class members must "opt in" by filing their consent to

suit.[2] Id.

      Putative class members are "similarly situated" for the purposes of § 216(b) if they

"'raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or

overtime arising from at least a manageably similar factual setting with respect to their job

requirements and pay provisions . . . .'" De Luna-Guerrero, 338 F. Supp. 2d at 654 (quoting

Ellen C. Kearns, The Fair Labor Standards Act § 18.IV.D.3 (1999)). However, "'their situations

need not be identical. Differences as to time actually worked, wages actually due and hours

involved are, of course, not significant to this determination.'" Id.

      Certification of an FLSA collective action is typically a two-stage process. First, the

court makes a preliminary determination whether to conditionally certify the class based upon

the limited record before the court. The standard for conditional certification is fairly lenient and

requires "'nothing more than substantial allegations that the putative class members were

together the victims of a single decision, policy, or plan.'" Thiessen v. Gen. Elec. Capital Corp.,

267 F.3d 1095, 1102 (10th Cir. 2001) (quoting Vaszlavik v. Storage Tech. Corp., 175 F.R.D.

_____

     [2] This procedure is different from the procedure utilized for class actions under Federal Rule of Civil Procedure 23(b)(3), where potential plaintiffs are bound by the judgment unless they opt out. See Section II.B., infra.

672, 678 (D. Colo. 1997)). If the class is conditionally certified, the court typically authorizes plaintiffs' counsel to provide putative class members with notice of the lawsuit and their right to opt in. Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001).

The second determination comes later, usually after discovery is complete, and is typically precipitated by a motion for "decertification" by the defendant. At this stage, there is a more developed factual record on which the court can base its decision. The court must again make a factual determination as to whether the opt-in plaintiffs are similarly situated; however, the scrutiny applied in the second stage is more rigorous than that of the notice stage. If the court determines that the plaintiffs are similarly situated, the collective action may proceed. However, if the claimants are not similarly situated, the court decertifies the class, and the claims of the opt-in plaintiffs are dismissed without prejudice. Id.; see also Jimenez-Orozco v. Baker Roofing Co., No. 5:05-CV-34-FL, 2007 WL 4568972, at *6 (E.D.N.C. Dec. 21, 2007).

2. Plaintiffs' Proposed Class

Plaintiffs define the class for which they seek conditional certification as follows:

> [A]ll current and/or former employees of Prestage Foods, who have held non-exempt positions working on or near the turkey processing line in Prestage Foods' turkey processing plant in St. Pauls, North Carolina, who don, doff, wash or sanitize any sanitary and protective clothing, equipment and gear; who engaged in any walking and waiting time associated with these tasks, at any time from June 19, 2006 until the present and were not fully compensated for all hours worked.

(Pls.' Mot. Conditional Certification of a Collective Action, DE # 21, at 1.) Here, Prestage argues that the proposed class is overly broad and poorly defined in that it encompasses many Prestage employees who are not "similarly situated" to the named plaintiffs. First, Prestage notes that defining the class as employees who work "near" the production line is vague and

ambiguous.  (Def.'s Mem. Opp'n Pls.' Mot. Conditional Class Certification, DE # 47, at 15.)

More importantly, Prestage claims, the class definition proposed by plaintiffs will include many

Prestage employees who regularly perform work duties within the area of the processing line but

are paid on a basis other than the line time system that applied to the named plaintiffs.  (Id. at

16.)  For example, jack drivers, lead persons, maintenance personnel and quality assurance

personnel work on the production floor, near the processing line, but are not paid according to

the line time system.  (Id.; Pope Aff., DE # 45-1, ¶ 26.)

Plaintiffs maintain that the class definition sufficiently defines the proposed class at this

early stage of the litigation.  They propose that the parties can confer to reach an agreement on

the appropriate employees to receive notice and that any areas of disagreement can be brought to

the court's attention.  (Pls.' Reply Mem. Supp. Mot. Conditional Class Certification, DE # 56, at

17.)

Because the named plaintiffs are former production line employees who were paid on a

line time basis at Prestage's St. Pauls facility, the court agrees with Prestage and finds that the

proposed class should be limited to production line employees who were or are paid on a line

time basis.  See Martinez-Hernandez v. Butterball, LLC, No. 5:07-CV-174-H(2), 2008 U.S. Dist.

LEXIS 111931, at *6 (E.D.N.C. Nov. 14, 2008) (limiting class to "production line employees" at

Butterball's turkey processing plant where named plaintiffs were current or former production

line employees).  The court further finds that plaintiffs have shown that members of the proposed

class (as more narrowly defined to include only production line employees who were or are paid

on a line time basis) are so similarly situated as to warrant conditional certification of a

collective action pursuant to 29 U.S.C. § 216(b).  The named plaintiffs and the other members of

5

the proposed class were or are all employed by Prestage at the St. Pauls facility. Although all may not have worked in the same department, the proposed class members have all worked on the production line. They complain that Prestage's use of a gang time or line time compensation system has deprived them of wages to which they were entitled under the FLSA, and they seek substantially the same form of relief. In essence, they claim they are "together the victims of a single decision, policy or plan." Thiessen, 267 F.3d at 1102.

Prestage asserts that members of the putative class are not similarly situated based on substantial factual differences in the actual protective gear worn by employees and in the individual donning and doffing practices and preferences of the employees who wear protective gear. (Def.'s Mem. Opp'n Pls.' Mot. Conditional Class Certification, DE # 47, at 17-19.) However, courts have routinely recognized that where an employer has a common practice of failing to pay employees for all hours worked, factual distinctions of the type claimed by Prestage provide no basis to deny initial certification of a collective action under the FLSA. See, e.g., Abadeer v. Tyson Foods, Inc., No. 3:09-00125, 2009 WL 4110295, at *1 (M.D. Tenn. Nov. 25, 2009) ("The factual variances cited by the Defendants do not justify denying class certification."); Russell v. Ill. Bell Tel. Co., 575 F. Supp. 2d 930, 938 (N.D. Ill. 2008); Dominquez ex rel. v. Minn. Beef Indus., Inc, Civ. No. 06-1002 (RHK/AJB), 2007 WL 2422837, at *3 (D. Minn. Aug. 21, 2007); Benbow v. Gold Kist, Inc., 3:06-CV-02751-MBS, slip op. at 4-5 (D.S.C. Apr. 16, 2007) (unpublished); Allen v. McWane, Inc., No. Civ.A.2:06-CV-158(TJ), 2006 WL 3246531, at *3 (E.D. Tex. Nov. 7, 2006); Frank v. Gold'n Plump Poultry, Inc., No. Civ. 041018JNERLE, 2005 WL 2240336, at *3 (D. Minn. Sept. 14, 2005). Prestage's objections are premature and are more appropriately considered during the second stage of the collective

6

action certification.  Thus, plaintiffs' motion for conditional certification under 29 U.S.C. § 216(b) is granted.

## B.  Supplemental Jurisdiction

In addition to their FLSA claims, plaintiffs have alleged state law claims for which they seek class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, before turning to the requirements of class certification under Rule 23, it is necessary to address Prestage's argument that this court should not exercise supplemental jurisdiction over plaintiffs' state law claims.  This court has original jurisdiction over plaintiffs' FLSA claims under 28 U.S.C. § 1331, as the claims raise a federal question.  This court may also exercise jurisdiction over the state law claims under 28 U.S.C. § 1367(a) if the state law claims form part of the same case or controversy.[3]  Non-federal claims are part of the same "case" as federal claims when they "derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Here, plaintiffs' state law claims share a common nucleus of operative fact with the claims raised under the FLSA.  The alleged violations of the NCWHA and the FLSA are based on the same conduct of Prestage with regard to the same employees over the same period of time.  See Salazar v. Agriprocessors, Inc., 527 F. Supp. 2d 873, 880 (N. D. Iowa 2007) (finding that plaintiffs demonstrated a common nucleus of operative fact in a donning/doffing action similar to the instant case).  Thus, the court is authorized to exercise supplemental

---

[3] 28 U.S.C. § 1367(a) provides in full:
Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

7

jurisdiction under § 1367(a).

However, this supplemental jurisdiction, which is allowed under 28 U.S.C. § 1367(a), is discretionary under 28 U.S.C. § 1367(c). City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172 (1997) ("pendent jurisdiction is a doctrine of discretion, not of plaintiff's right") (citation omitted) (internal quotation marks omitted). A district court may decline to exercise supplemental jurisdiction over a claim under 28 U.S.C. § 1367(a) if –

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In determining whether to exercise supplemental jurisdiction, courts are to consider the "'principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.'" City of Chicago, 522 U.S. at 172-73 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988)).

Prestage does not explicitly specify the subsection(s) of 28 U.S.C. § 1367(c) on which it relies in arguing that the exercise of supplemental jurisdiction is improper in this case. The court initially determines that jurisdiction will not be declined under 28 U.S.C. § 1367(c)(1)-(3). Plaintiffs' action under North Carolina's "payday statute," N.C. Gen. Stat. § 95-25.6, involves standard claims for regular and overtime pay that do not raise a novel or complex issue of North Carolina law, and the federal claims on which original jurisdiction rests have not been dismissed. Nor will the state law claims "substantially predominate" over the FLSA claims "in terms of proof, . . . the scope of the issues raised, or . . . the comprehensiveness of the remedy

sought . . . ." <u>United Mine Workers</u>, 383 U.S. at 726. While the class action on the state law claims could involve many more plaintiffs than the collective action on the FLSA claims, the substance and basis of the FLSA claims and the state law claims are virtually indistinguishable. Because the state law claims "essentially replicate the FLSA claims[,]" the state law claims "plainly do not predominate." <u>Lindsay v. Gov't Employees Ins. Co.</u>, 448 F.3d 416, 425 (D.C. Cir. 2006).[4]

The closest question in this case is whether supplemental jurisdiction should be declined under 28 U.S.C. § 1367(c)(4). Under this subsection, a "court may consider whether 'exceptional circumstances' exist and whether 'there are other compelling reasons for declining jurisdiction . . . .'" <u>Id.</u> (quoting 28 U.S.C. § 1367(c)(4)).

Prestage argues that subversion of congressional intent is a compelling reason to decline supplemental jurisdiction. (<u>See</u> Def.'s Mem. Opp'n Pls.' Mot. Class Certification, DE # 48, at 16.) Here, plaintiffs' FLSA claims can be asserted in a collective action, but Congress specifically chose to implement an opt-in procedure, which means that a potential plaintiff only enters an FLSA case if he or she affirmatively chooses to opt in. 29 U.S.C. § 216(b). Plaintiffs also assert similar state law wage claims for which they seek class certification pursuant to Rule

---

[4] In this case, Prestage appears to contend that the sheer difference in sizes for the two classes will profoundly affect the substantive rights of the parties and create predominate state law claims. (<u>See</u> Def.'s Mem. Opp'n Pls.' Mot. Class Certification, DE # 48, at 15.) In making this argument, Prestage relies on <u>De Asencio v. Tyson Foods, Inc.</u>, 342 F.3d 301, 311 (3d Cir. 2003) ("Predomination under section 1367 generally goes to the type of claim, not the number of parties involved. But the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree . . . ."). However, the <u>De Ascencio</u> opinion was rendered at a stage of litigation that was completely different from and much more procedurally developed than this case. Thus, the court finds that an examination into the possible sizes of the two classes would be premature at this point in the litigation. At this time, the relevant consideration regarding the predominance issue is the type of claims involved, rather than the potential difference in size of the two classes. <u>See</u> <u>Lindsay</u>, 448 F.3d at 425; <u>Wang v. Chinese Daily News, Inc.</u>, — F.3d —, Nos. 08-55483, 08-56740, 2010 WL 3733568, at *14 (9th Cir. Sept. 27, 2010).

23 of the Federal Rules of Civil Procedure. However, Rule 23(b)(3)[5] uses an opt-out procedure, which means that plaintiffs are automatically part of the class unless they opt out. So there are two different types of procedures relating to the certification of plaintiffs' wage claims: the opt-in procedure specifically set forth by Congress under the FLSA and the opt-out procedure under Rule 23. There is a tension between these procedures, especially when plaintiffs attempt to use them in the same lawsuit.

Numerous cases have addressed the effect of this procedural tension on supplemental jurisdiction, but their resolutions are split, and no authority from the Fourth Circuit is directly on point. Some district courts have declined to exercise supplemental jurisdiction over Rule 23 class actions involving state law wage claims because of this tension or because using opt-in and opt-out procedures in the same case could confuse the class. See, e.g., Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 70 (E.D. Pa. 2009) (listing cases); McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 577 (N.D. Ill. 2004) (The plaintiff "cannot circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar in substance to the FLSA that lack the opt-in requirement."); Moeck v. Gray Supply Corp., No. 03-1950 (WGB), 2006 WL 42368, at *5 (D.N.J. Jan. 6, 2006); Hatfield v. Oak Hill Banks, 115 F. Supp. 2d 893, 898 (S.D. Ohio 2000) ("Plaintiffs' attempt to subvert the will of Congress . . . by laundering their purported class through § 1367 and Rule 23 is a sufficiently compelling reason to decline

---

[5] It should be noted that plaintiffs have asked for class action certification under both subdivision (b)(1) and (b)(3) of Rule 23. See Section II.C.2., infra. If the court were to certify plaintiffs' class action under Rule 23(b)(1), potential plaintiffs would not be able to opt out of the class action because membership is mandatory under Rule 23(b)(1). See Fed. R. Civ. P. 23(c)(2), (3); Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 121 (1994); 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1784.1 (3d ed. 2005). Only if the court were to certify plaintiffs' class action under subdivision (b)(3) would there truly be an opt-in/opt-out situation.

supplemental jurisdiction.") (internal quotation marks omitted). Furthermore, Prestage specifically points to a decision by this court where the exercise of supplemental jurisdiction was declined in a similar scenario based on the conclusion that "[t]he inclusion of a state law claim involving over 100 plaintiffs with a separate federal law claim involving a separate, distinct, and smaller class . . . would undoubtedly confuse a jury . . . ." Zelaya v. J.M. Macias, Inc., 999 F. Supp. 778, 783 (E.D.N.C. 1998).

The jurisprudential landscape has changed significantly since this court issued its decision in Zelaya twelve years ago. In Zelaya, this court noted that the plaintiffs' FLSA and state law wage claims were "not the type of claims expected to be tried in one proceeding, as they would involve two different and distinct sets of plaintiffs." Id. This court also noted that it was "not aware of any reported cases in which § 1367(a) has been interpreted to allow [pendant-plaintiff jurisdiction.]" Id. at 782. Since the decision in Zelaya, many other courts, including ones in this district, have exercised supplemental jurisdiction over state wage claims in actions involving FLSA claims. These courts "downplay the issue of congressional intent and emphasize that factors such as judicial economy and efficiency strongly favor the exercise of jurisdiction over Rule 23 class actions that involve identical facts and highly similar legal theories." Bamonte v. City of Mesa, No. CV 06-01860-PHX-NVW, 2007 WL 2022011, at *4 (D. Ariz. July 10, 2007); see, e.g., Cortez v. Neb. Beef, Inc., 266 F.R.D. 275, 287 (D. Neb. 2010) ("It would illserve the interests of convenience or judicial economy to re-litigate in state court the defendants' pay practices."); Guzman v. VLM, Inc., No. 07-CV-1126, 2008 WL 597186, at *9 (E.D.N.Y. Mar. 2, 2008) ("[T]he values of judicial economy, convenience, and fairness all favor exercising supplemental jurisdiction . . . ."); Salazar v. Agriprocessors, Inc., 527 F. Supp.

2d 873, 884-87 (N.D. Iowa 2007); <u>Brickey v. Dolencorp, Inc.</u>, 244 F.R.D. 176, 179 (W.D.N.Y.

2007) ("Rule 23 and FLSA actions are routinely prosecuted together, and the complexities of

Rule 23 and FLSA hybrid actions are a challenge that the federal judiciary, and properly

instructed juries, are generally well-equipped to meet."); <u>Jimenez-Orozco v. Baker Roofing Co.</u>,

No. 5:05-CV-34-FL, 2007 WL 4568972, at *6 (E.D.N.C. Dec. 21, 2007) (certification under

both § 216(b) and Rule 23 is appropriate where "the essential facts and issues regarding each set

of claims are likely to be the same and proceedings are not likely to be rendered unduly

burdensome by inclusion of both sets of claims"); <u>Beltran-Benitez v. Sea Safari, Ltd.</u>, 180 F.

Supp. 2d 772, 774 (E.D.N.C. 2001) ("Resolving the NCWHA claims along with the FLSA

claims will not be unduly burdensome, and is encouraged by the Supreme Court precedent in

<u>Gibbs</u>, 383 U.S. at 725-

28 . . . .").[6]

      Very few circuit courts have considered the propriety of a district court exercising

jurisdiction over state law wage claims that are supplemental to FLSA claims over which the

---

[6] Some district courts have additionally noted that "'[t]he issue of congressional intent with respect to the FLSA is not an issue of judicial economy, convenience, fairness to the parties, or federal-state comity. As a result, it may not serve as a 'compelling reason' for declining supplemental jurisdiction.'" <u>Salazar</u>, 527 F. Supp. 2d at 885 (quoting <u>Bamonte</u>, 2007 WL 2022011, at *4). Other district courts have simply proceeded to certify both FLSA collective actions and Rule 23 classes with little or no discussion of the issue of supplemental jurisdiction. <u>See</u>, <u>e.g.</u>, <u>Abadeer v. Tyson Foods, Inc.</u>, No. 3:09-00125, 2009 WL 4110295, at *1 (M.D. Tenn. Nov. 25, 2009) (certifying both an FLSA collective class and a Rule 23 class in a donning/doffing action similar to the instant case); <u>Martinez-Hernandez v. Butterball, LLC</u>, No. 5:07-CV-174-H(2), 2008 U.S. Dist. LEXIS 111931 (E.D.N.C. Nov. 14, 2008) (same); <u>Lopez v. Tyson Foods</u>, No. 8:06CV459, 2008 WL 3485289 (D. Neb. Aug. 7, 2008) (same); <u>Toure v. Cent. Parking Sys.</u>, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *9 (S.D.N.Y. Sep. 28, 2007); <u>Romero v. Producers Dairy Foods, Inc.</u>, 235 F.R.D. 474, 494 (E.D. Cal. 2006); <u>Frank v. Gold'n Plump Poultry, Inc.</u>, No. Civ. 041018JNERLE, 2005 WL 2240336, at *5 n.4 (Dist. Minn. Sept. 14, 2005) (certifying both an FLSA collective class and a Rule 23 class in a donning/doffing action similar to the instant case); <u>Scott v. Aetna Servs., Inc.</u>, 210 F.R.D. 261, 268 (D. Conn. 2002) (certifying a Rule 23 class alleging violations of the Connecticut Minimum Wage Act where the court had previously certified an FLSA collective action in the same suit); <u>Trotter v. Perdue Farms, Inc.</u>, No. CIV.A.99-893-RRM, 2001 WL 1002448, *1-3 (D. Del. Aug. 16, 2001) (certifying both an FLSA collective class and a Rule 23 class in a donning/doffing action similar to the instant case).

district court has federal question jurisdiction. In <u>De Asencio v. Tyson Foods, Inc.</u>, 342 F.3d 301, 309-12 (3d Cir. 2003), a case on which Prestage heavily relies, the Third Circuit held that the district court abused its discretion in exercising supplemental jurisdiction over a state law class action that was factually similar to the instant case. <u>De Asencio</u>, however, rested primarily on the fact that the plaintiffs' case involved novel and complex issues of state law that would require considerably more factual development than the FLSA claim, and also on the size disparity between two prospective classes of 447 opt-in FLSA plaintiffs and 4,100 opt-out Rule 23 plaintiffs.[7] <u>Id.</u> at 309-11. As previously noted, this case does not raise a novel or complex issue of North Carolina law, nor do the state law claims substantially predominate over the FLSA claims at this time.

In <u>Lindsay v. Government Employees Insurance Co.</u>, 448 F.3d 416 (D.C. Cir. 2006), the District of Columbia Circuit Court of Appeals reversed the district court's decision that it did not have supplemental jurisdiction under 28 U.S.C. § 1367(a) and remanded the case for reconsideration. In addressing the supplemental jurisdiction issue, the circuit court noted: "We do not view the difference between the opt-in procedure provided by section 216(b) for FLSA claims and the opt-out procedure for state law claims provided by Rule 23 as fitting the 'exceptional circumstances/other compelling reasons' language of section 1367(c)(4)." <u>Lindsay</u>, 448 F.3d at 425 (circumscribing the district court's authority to decline supplemental jurisdiction on remand). The <u>Lindsay</u> court determined that "[w]hile there is unquestionably a difference – indeed, an opposite requirement – between opt-in and opt-out procedures, we doubt that a mere

---

[7] Thus, the Third Circuit relied on 28 U.S.C. § 1367(c)(1)-(2) as the basis for its ruling. Although the court did note "the general federal interest in opt-in wage actions[,]" this was not the basis of the court's holding. <u>De Asencio</u>, 342 F.3d at 312. In fact, the court did not consider whether "exceptional circumstances" exist and specifically noted that "[w]e do not reach subsection (4), although it may be relevant." <u>Id.</u> at 309 n.12.

procedural difference can curtail section 1367's jurisdictional sweep." Id. at 424 (referring specifically to 28 U.S.C. § 1367(a)) (emphasis in original). Most recently, in Wang v. Chinese Daily News, Inc., — F.3d —, Nos. 08-55483, 08-56740, 2010 WL 3733568, at *14 (9th Cir. Sept. 27, 2010), the Ninth Circuit followed the reasoning in Lindsay and concluded that it was within the district court's discretion in an FLSA action to exercise supplemental jurisdiction over the plaintiffs' state law claims.

Thus, the weight of authority since this court's decision in Zelaya supports the exercise of supplemental jurisdiction in this case. The court also finds that consolidating the state law claims with the federal claims would be much more efficient. Retaining the state law claims promotes judicial economy, because it avoids the substantial problem of parallel lawsuits in state and federal court and avoids duplication of work and waste of judicial resources. The FLSA and state law claims are premised on the same facts and likely will succeed or fail together. Additionally, it is far more convenient for the parties to have their nearly identical claims resolved in one forum, despite the logistical problems inherent in such a lawsuit. As a result, the court will exercise supplemental jurisdiction over the state law claims in this case.

C. Motion for Rule 23 Certification

The court now turns to the issue of whether the named plaintiffs meet the requirements for certifying a class pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, plaintiffs argue that Prestage violated North Carolina's "payday statute," N.C. Gen. Stat. § 95-25.6,[8] by failing to pay its employees (1) wages, when due, for all hours worked at their regular

---

[8] Section 95-25.6 of the North Carolina General Statutes provides, in pertinent part, that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday."

14

hourly rate (which exceeded the minimum wage rate under the FLSA) and (2) wages at North

Carolina's minimum wage rate of $6.15 per hour (which exceeded the FLSA minimum wage

rates of $5.15 and $5.85 per hour for the applicable periods of time). (Compl. ¶ 36.) Plaintiffs

propose essentially the same class for purposes of certification under Rule 23 as they do under §

216(b) of the FLSA.

A central purpose of class actions is to promote judicial economy and efficiency.

Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 424 (4th Cir. 2003). "[C]lass actions also

'afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the

traditional framework of multiple individual damage actions.'" Id. (quoting 5 James Wm.

Moore, *et al.*, Moore's Federal Practice § 23.02 (3d ed. 1999)). "The policy at the very core of

the class action mechanism is to overcome the problem that small recoveries do not provide the

incentive for any individual to bring a solo action prosecuting his or her rights." Mace v. Van

Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997).

To fulfill the requirements for class certification, plaintiffs must first show compliance

with Rule 23(a) of the Federal Rules of Civil Procedure, which applies to all class actions. Once

plaintiffs have met the requirements of Rule 23(a), they must show that class certification is

proper under one of the subdivisions of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S.

591, 614 (1997); Haywood v. Barnes, 109 F.R.D. 568, 575 (E.D.N.C. 1986). The party seeking

class certification bears the burden of proof. Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146

(4th Cir. 2001); Poindexter v. Teubert, 462 F.2d 1096, 1097 (4th Cir. 1972).

To be certified as a class action under Rule 23, an action must meet four threshold

requirements: (1) the class must be so numerous that joinder of all members is impractical

("numerosity requirement"); (2) there must be questions of law or fact common to the class

("commonality requirement"); (3) the representative parties' claims must be typical of the claims

of the class ("typicality requirement"); and (4) the representative parties must be able to fairly

and adequately protect the interests of the class ("adequacy-of-representation requirement").

Fed. R. Civ. P. 23(a).

### 1. Rule 23(a) Requirements

#### a. Numerosity Requirement

Numerosity requires that "the class is so numerous that joinder of all members is

impracticable[.]" Fed. R. Civ. P. 23(a)(1). Plaintiffs allege that there are at least 1,000 potential

plaintiffs in this case. Prestage does not challenge plaintiffs' evidence relating to the number of

potential plaintiffs. However, Prestage argues that because the number of opt-in FLSA plaintiffs

is not yet known, it is not possible to make a determination about (1) whether joinder of all of the

potential plaintiffs is practical or impractical for purposes of Rule 23 and (2) whether plaintiffs

meet the numerosity requirement for Rule 23 class certification. (See Def.'s Mem. Opp'n Pls.'

Mot. Class Certification, DE # 48, at 18.) Prestage asserts that joinder would not be

"impracticable," citing to evidence that only "15% to 30% of potential class members actually

opt-in and file consents to join an FLSA collective action." (Id. at 17.) Because "[i]t is not yet

possible to know the extent to which the size of the proposed FLSA collective action . . . will be

different in comparison to the size of the proposed opt-out Rule 23 class action," Prestage

maintains that the court should defer ruling on plaintiffs' motion for Rule 23 class certification

until after the opt-in period on plaintiffs' FLSA claims has expired. (Id.)

"'No specified number is needed to maintain a class action.'" Brady v. Thurston Motor

Lines, 726 F.2d 136, 145 (4th Cir. 1984) (quoting Cypress v. Newport News Gen. &

Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967)).  Given that the Fourth Circuit has

held that a class of eighteen people alone is sufficient to satisfy the numerosity requirement, the

court rejects Prestage's arguments and concludes that the numerosity requirement has been met.

Cypress, 375 F.2d at 653; see also Rodger v. Electronic Data Systems Corp., 160 F.R.D. 532,

535 (E.D.N.C. 1995) ("a class of as few as twenty-five to thirty members raises a presumption

that joinder would be impracticable"); Haywood, 109 F.R.D. at 576.

> b. Commonality and Typicality Requirements

The requirements for typicality and commonality often merge.  See Kidwell v. Transp.

Commc'ns Int'l Union, 946 F.2d 283, 305 (4th Cir. 1991).  "'The threshold requirements of

commonality and typicality are not high; Rule 23(a) requires only that resolution of the common

questions affect all or a substantial number of the class members.'"  Brown v. Nucor Corp., 576

F.3d 149, 153 (4th Cir. 2009) (quoting Shipes v. Trinity Indus., 987 F.2d 311, 316 (5th Cir.

1993)).  A plaintiff's claim is typical if it arises from the same event, practice, or course of

conduct that gives rise to the claims of other class members, and if the plaintiff's claim is based

on the same legal theory as those of the other members.  See Haywood, 109 F.R.D. at 578.  The

commonality and typicality requirements may be satisfied even if there are factual distinctions

between the claims of the named plaintiffs and those of the other class members.  See Broussard

v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 344 (4th Cir. 1998) ("We . . . do not

suggest that the commonality and typicality elements of Rule 23 require that members of the

class have identical factual and legal claims in all respects."); Haywood, 109 F.R.D. at 578.

Prestage argues that plaintiffs fail to satisfy the commonality and typicality requirements

of Rule 23(a). Prestage's arguments are similar to those made with respect to the certification of the collective FLSA action, *i.e.*, that the class plaintiffs seek to certify is too vague and broad. See Section II.A.2., supra. The court again agrees with Prestage and limits the Rule 23 class to production line employees who were paid on a line time basis.

As so limited, the class meets the commonality and typicality requirements of Rule 23(a). The putative class members were or are all production line employees of Prestage's St. Pauls turkey processing plant. Irrespective of the department in which they have worked, the members of the proposed class have all been paid based on a line time basis. Due to Prestage's line time policy, plaintiffs allege that they have not been paid regular and overtime wages for all time worked as required by North Carolina's payday statute. Although there may be certain factual differences among the individual class members, the class members' claims arise from the same course of conduct (Prestage's use of a line time system), raise common questions of law and fact (*e.g.*, whether the time spent changing into and out of protective gear and traveling to and from work stations constitutes "work"), and are based on the same legal theory (violation of N.C. Gen. Stat. § 95-25.6) as those of the named plaintiffs. Martinez-Hernandez v. Butterball, LLC, No. 5:07-CV-174-H(2), 2008 U.S. Dist. LEXIS 111931, at *12 (E.D.N.C. Nov. 14, 2008).

c. Adequacy-of-Representation Requirement

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement consists of two components. First, the class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974). Prestage does not dispute that counsel

18

for plaintiffs have sufficient experience to represent a class, and the court finds that plaintiffs' counsel possess the necessary qualifications.  Second, the proposed class representatives must be members of the class they purport to represent, and their interests must not be in conflict with those of the other class members.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997).  Here, Prestage cites no specific interest which renders the named plaintiffs inadequate.  The court finds that plaintiffs have met the requirement of adequacy of representation.

    2.  Rule 23(b) Requirement

    Having found that the prerequisites of Rule 23(a) are met, the next inquiry is whether plaintiffs' action also falls under any of the three categories listed in Rule 23(b).  Plaintiffs assert that their state law wage claims are maintainable under both Rule 23(b)(1) and Rule 23(b)(3).  Certification under Rule 23(b)(1) constitutes a mandatory class, but certification under Rule 23(b)(3) does not.  See Fed. R. Civ. P. 23(c)(2), (3); Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 121 (1994); 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1784.1 (3d ed. 2005).  Prestage does not challenge plaintiffs' contention that their class action is maintainable under Rule 23(b)(1)(A), 23(b)(1)(B) and/or 23(b)(3).  Because neither Prestage nor plaintiffs have expressed a preference for certification under any of these sections, the court will determine whether certification is appropriate under each section.

    a.  Rule 23(b)(1)

Under Rule 23(b)(1), the court must find:

prosecuting separate actions by or against individual class members would create
a risk of:
(A) inconsistent or varying adjudications with respect to individual class members
that would establish incompatible standards of conduct for the party opposing the
class; or
(B) adjudications with respect to individual class members that, as a practical

matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).

The court first notes that other district courts have reached differing conclusions regarding the issue of whether donning and doffing cases such as this one are properly certified under Rule 23(b)(1). Compare Cortez v. Nebraska Beef, Inc., 266 F.R.D. 275, 292 (D. Neb. 2010) ("class certification under Rule 23(b)(1) appears appropriate"); Lopez v. Tyson Foods, No. 8:06CV459, 2008 WL 3485289, at *3 (D. Neb. 2008) with Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 907-08 (N.D. Iowa 2008) (class certification not appropriate under either subsection of Rule 23(b)(1)). The court finds the reasoning of Bouaphakeo to be persuasive. Subdivision (A) is intended to allow class certification when individual actions could have an adverse effect on the party opposing the class, i.e., the defendant. See 7AA Wright et al., supra, § 1773. "Under subdivision (A), 'there obviously must be a risk that separate actions will in fact be brought if a class action is not permitted. Otherwise there is no danger that incompatible standards of conduct will be formulated by the courts.'" Bouaphakeo, 564 F. Supp. 2d at 907 (quoting 7AA Wright et al., supra, § 1773). In this case, there certainly is a risk that separate actions will in fact be brought. However, the court does not see how individual lawsuits achieving different results would impair Prestage's ability to pursue a uniform course of conduct. Prestage would not be put in a conflicted position simply because it might have "'to pay damages to some class members but not to others or to pay them different amounts.'" Id.; see also Smith v. Brown & Williamson Tobacco Corp., 174 F.R.D. 90, 99 (W.D. Mo. 1997) ("Although individual lawsuits might end with different results, this does not justify

certification of the class [under Rule 23(b)(1)(A)].").  Thus, the court finds that plaintiffs have

not met their burden of proving that class certification is appropriate under subdivision (A).


The court now turns to the issue of whether class certification is proper under Rule

23(b)(1)(B).

> Subdivision (B) is intended to allow class certification when individual actions
> could have an adverse effect upon the putative plaintiffs.  Wright, § 1774 at 24
> ("Rule 23(b)(1)(B) allows class actions to be brought in cases in which separate
> suits might have undesirable effects on the class members, rather than on the
> opposing party.").  Under subdivision (B), and unlike subdivision (A), "it is not
> necessary to demonstrate that separate actions are likely or feasible in order to
> invoke Rule 23(b)(1)(B)."  Wright, § 1774 at 25.  It simply needs to be shown that
> individual actions would, "as a practical matter," be dispositive, impair, or
> impede the interests of other members not parties to the individual lawsuit.

Bouaphakeo, 564 F. Supp. 2d at 907-08.

Here, plaintiffs argue that "[m]ost, if not all, of these workers lack the financial resources

to litigate individually against a large corporation like Prestage."  (Pls.' Mem. Supp. Mot. Class

Certification, DE # 26, at 15.)  "Subdivision (B), however, is not really concerned with the

financial resources of individual plaintiffs, but rather the financial resources of the defendant."

Bouaphakeo, 564 F. Supp. 2d at 908; see also Ortiz v. Fireboard Corp., 527 U.S. 815, 834-38

(1999); Hilton v. Wright, 235 F.R.D. 40, 53 (N.D.N.Y. 2006).  That is why Rule 23(b)(1)(B) is

invoked in "limited fund" circumstances, whereby individual lawsuits may exhaust the limited

amount of assets available and leave some claimants without a remedy.  See In re A.H. Robins

Co., Inc., 880 F.2d 709, 728 (4th Cir. 1989).  Plaintiffs have failed to identify the insufficiency of

any fund such that the individual plaintiffs would be substantially impaired or impeded from

protecting their interests through separate actions without being represented in this suit.[9]  Thus,

the court finds that certification under Rule 23(b)(1)(B) is improper.

        b.  <u>Rule 23(b)(3)</u>

     To be certified under Rule 23(b)(3), plaintiffs must satisfy the "predominance" and

"superiority" components of the rule.  <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 615

(1997).  These requirements were added "to cover cases 'in which a class action would achieve

economies of time, effort, and expense, and promote . . . uniformity of decision as to persons

similarly situated, without sacrificing procedural fairness or bringing about other undesirable

results.'"  <u>Id.</u> (quoting Rule 23 Advisory Committee's Notes (1966 amend. subdiv. (b)(3)).  Rule

23(b)(3) specifically lists four factors pertinent to the court's determinations regarding

predominance and superiority:

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy
> already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the
> claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

     With respect to the first factor, the court does not foresee a great interest among

---

[9] Typically, certification of a class under Rule 23(b)(1)(B) is based on a "limited fund" theory.  However, while the limited fund scenario is the "paradigm suit" under this subsection, courts have also granted certification under this subsection in other circumstances.  <u>Hilton</u>, 235 F.R.D. at 53; <u>see also</u> <u>Ortiz</u>, 527 U.S. at 834 (listing examples of cases where the prosecution of separate actions would create a risk of impairment of the interests of others, such as suits brought to reorganize fraternal-benefit societies and actions by shareholders to declare a dividend or to otherwise fix their rights).  Plaintiffs have not met their burden of proving that this case falls under any of the recognized scenarios for certification under Rule 23(b)(1)(B).

individual plaintiffs in proceeding separately. Such individualized lawsuits would be financially

burdensome, and many plaintiffs may not have the means or ability to prosecute their claims

separately. On the other hand, the advantages of determining the common issues by means of a

class action are evident, as all employees in the class could finalize their claims in one

proceeding rather than in hundreds of individual suits. Martinez-Hernandez v. Butterball, LLC,

No. 5:07-CV-174-H(2), 2008 U.S. Dist. LEXIS 111931, at *14 (E.D.N.C. Nov. 14, 2008). With

respect to the second factor, none of the parties have indicated that there is any similar ongoing

litigation by the class members against Prestage. With respect to the third factor, Prestage's St.

Pauls, North Carolina facility is located within this district, and there is no reason why this court

would not be a desirable forum for the litigation. With respect to the fourth factor, the court does

not foresee significant problems of manageability.

Furthermore, regarding the predominance inquiry, the court finds that the legal and

factual issues common to the putative class predominate over any individual issues of law or

fact. Prestage's use of a line time policy affected all of the putative class members. The court

recognizes that some factual differences may exist among the putative class members. Clearly,

not all employees paid on line time wear the same protective gear or use the same equipment.

However, common evidence that Prestage's compensation system cannot account for even the

basic or standard protective gear that employees need to don, doff, and clean would establish a

prima facie case for the class. Individual issues may exist, but the court does not believe they

predominate. See id. at *13 ("Although some factual differences may exist among the putative

class members, these differences do not change the fact that the principal questions surrounding

plaintiffs' payday claim are the same."); Bouaphakeo, 564 F. Supp. 2d at 909.

23

Regarding the superiority inquiry, the court is to compare the possible alternatives to a class action and determine if any is superior to the proposed class action. The alternatives to class action litigation in this case are individual lawsuits by class members. Based on the relatively small amount of wages claimed in this case, it does not appear that the putative class members would have a great interest or desire in bringing individual suits against Prestage. Even if the putative class members were inclined to pursue individual actions, there is no doubt this would be more burdensome on the class members, and it would likely be less efficient use of judicial resources. See Martinez-Hernandez, 2008 U.S. Dist. LEXIS 111931, at *14; Bouaphakeo, 564 F. Supp. 2d at 909. Under these circumstances, the court finds that the superiority requirement has been met.

### III. CONCLUSION

For the foregoing reasons, IT IS ORDERED as follows:

1. Plaintiffs' motions are GRANTED IN PART on the terms set forth herein.

2. The case shall proceed with respect to the NCWHA claims as a class action under Federal Rule of Civil Procedure 23 and with respect to the FLSA claims as a collective action under 29 U.S.C. § 216(b).

3. The class is defined as follows with respect to both plaintiffs' NCWHA claims and FLSA claims:

> All current and/or former employees of Prestage Foods who have held nonexempt positions working on the turkey processing line in Prestage Foods'
> turkey processing plant in St. Pauls, North Carolina, who don, doff, wash or sanitize any sanitary and protective clothing, equipment and gear; who engaged in walking and waiting time associated with these tasks at any time from June 19,

2007[10] through the deadline for filing consents to sue; who were paid on a line time or "GANG" basis; and who were not fully compensated for all hours worked.

4.  Gilda A. Hernandez and H. Forest Horne, Jr. shall serve as counsel for the class.

5.  The court DIRECTS the parties to confer and to jointly submit, within twenty (20) days of the date of this order, a revised proposed class notice (including appropriate forms) in conformance with the court's ruling set forth herein.  The parties shall submit English and Spanish versions of the class notice and appropriate forms, with the Spanish translation prepared by an individual certified as a Spanish-English Federal Court Interpreter by the Administrative Office of the United States Courts.  Thereafter, the court will undertake approval of the proposed notice.

This 10 November 2010.

_____
W. Earl Britt
Senior U.S. District Judge

---

[10] The court has selected 19 June 2007 as the starting date for the class period because this is the date used by plaintiffs in their proposed notice to the class.  (DE # 36-1.)  However, as previously noted, plaintiffs' intent with respect to the beginning date of the class is unclear.  See Section I., n.1, supra.  If necessary, the parties should correct the starting date in the revised proposed class notice.